HOOD, Judge.
The Housing Authority of the City of Lafayette instituted this suit to recover the amount owed on a paving lien affecting property in that city which it purchased from Oakbourne Investments, Inc. The defendants are Oakbourne, Oliver J. Le-Blanc (Clerk of Court for Lafayette Parish in 1968), and the latter’s insurer, Mid-Continent Underwriters, Inc. LeBlanc and Mid-Continent filed a third party action against Oakbourne and Investors Development Corporation, seeking indemnity in the event they are held to be liable to plaintiff.
Judgment was rendered by the trial court rejecting plaintiff’s demands against all defendants, and dismissing the third party action filed by LeBlanc and Mid-Continent. Plaintiff appealed. LeBlanc and Mid-Continent have answered the appeal, praying for indemnity in the event plaintiff ultimately recovers.
The issues are: (1) In the sale from Oakbourne to plaintiff, did the parties intend that plaintiff was to acquire the property subject to the paving lien which is at issue here? (2) Was the clerk of court negligent in failing to list the paving lien in a mortgage certificate issued to plaintiff, and if so, did plaintiff rely on that certificate? (3) If the clerk of court and his insurer are liable to plaintiff, are they entitled to indemnity from Oakbourne?
In 1967 and early in 1968, plaintiff negotiated with Oakbourne and Investors Development Corporation for the purchase of two contiguous tracts of land in the City of Lafayette, comprising a total of 21.S acres. Oakbourne owned one of those tracts, being 6.487 acres, and Investors Development owned the other. In a letter dated April 10, 1968, Oakbourne and Investors Development offered to sell the two tracts to plaintiff for a total consideration of $283,176.02. An agreement had been reached between the property owners as to the manner in which the purchase price was to be divided between them.
Plaintiff wrote to both corporations on April 17, 1968, accepting the above offer, but making that acceptance subject to four conditions, one of which was:
"The title to the property offered by you being found merchantable by the at *923 torneys for the Housing Authority and said property is to be conveyed free and clear of all liens, encumbrances and restrictions of any nature whatsoever. Taxes to be prorated as of date of sale.”
Defendants apparently agreed to those conditions, and plaintiff thereupon proceeded to have the title to both tracts of land examined. In connection with that examination counsel for plaintiff asked the Clerk of Court for Lafayette Parish to issue two separate mortgage certificates, one relating to the tract which plaintiff had agreed to purchase from Oakbourne and the other relating to the tract being purchased from Investors Development. These certificates were issued and delivered to the attorney for the Housing Authority in October, 1968. The certificate relating to the Investors Development property, issued on October 14, 1968, showed that that property was encumbered by some mortgages, judgments and liens. The certificate relating to the Oakbourne property, issued on October 21, 1968, recited that there were no mortgages, liens or privileges against the name of defendant, Oakbourne Investments, Inc., affecting the property which plaintiff was purchasing from that corporation, except for one mortgage executed by Oakbourne in favor of Holder or Holders. The certificate indicated that there were no paving liens of record affecting that property.
The day after the certificate relating to the Oakbourne property was issued', plaintiff’s attorney went to the office of the Clerk of Court and asked the deputy clerk who had issued that certificate to check the records again to determine whether there were other liens or encumbrances against the subject property. The deputy clerk checked the records again, as requested, and assured plaintiffs counsel that the property was free and clear of all liens except the mortgage which was shown in the certificate.
The Housing Authority then, pursuant to its agreement with defendants proceeded to make out checks for the amount due on each lien or encumbrance affecting the two tracts of land which were being purchased. A separate check was issued for the amount due on each such lien or encumbrance, and it was made payable jointly to the lien holder and to the owner of the property. In that manner all of the liens or encumbrances shown on the mortgage certificates were paid and cancelled. The payments so made were deducted from the agreed purchase price, and the remaining balances due on the purchase price were paid to the vendors at the time the sales were completed.
On December 2, 1968, Oakbourne and the Housing Authority executed a document designated as a “Credit Sale,” under the terms of which Oakbourne conveyed to plaintiff the above mentioned 6.487 acre tract of land for a consideration of $82,984.94. That document provided that Oakbourne sells and conveys that property to plaintiff, “with full guarantee of title and free from all encumbrances . . . ” It also contains the following pertinent language:
“This sale is made and accepted for and in consideration of the sum of .... ($82,984.94) . . .
“It is understood and agreed between the parties herein that the monies being paid to the vendor for his property are on a net basis, after deducting monies being paid for all paving, sewerage and other assessments and easements, due and owing to public bodies .
“It is hereby understood and agreed hereby that upon the signing of this credit sale, and the deposit of said funds with the escrow herein, the vendee is hereby finally and completely relieved of any and all further responsibility or liability for the payment of any additional funds, said property being transferred hereby free and clear of all liens and encumbrances to vendee herein; .
“Purchaser dispenses with the certificate required by Article 3364 of the Revised Civil Code of this state and also *924 with the production of tax receipt required by law, and the undersigned notary is hereby released from all responsibility and liability in connection therewith.” (Emphasis added).
Sometime after this act of sale was completed, the City of Lafayette notified the Housing Authority that the property which it had purchased from Oakbourne was subject to a paving lien existing in favor of the City of Lafayette in the amount of $6,137.60. Plaintiff then determined that a paving assessment had been levied against the property, but that the Clerk of Court had failed to index the assessment correctly and for that reason he had not shown it on the mortgage certificate which had been issued to plaintiff’s attorney. Plaintiff thereupon made demand on Oakbourne that it pay the paving assessment, contending that the latter warranted the title to be free from all liens and encumbrances. Alternatively, plaintiff made demand on the Clerk of Court for the loss it suffered as the result of the alleged negligence of the Clerk, or his deputies, in failing to properly index the paving lien and to list it on the mortgage certificate. No payment was made to plaintiff in response to those demands, and this suit was filed.
Plaintiff contends primarily that Oak-bourne warranted the title to the tract of land which it sold, and that it was the intent of the parties that plaintiff would acquire the property free and clear of all liens and encumbrances, including the paving lien which is at issue here. Alternatively, it contends that it relied on the mortgage certificate issued by the Clerk of Court, that the clerk was negligent in failing to properly index the paving lien and to show it on that certificate, and that the clerk and his insurer thus are liable to plaintiff for the amount which it was required to pay on that paving assessment.
Defendants contend that the deed provides in clear and unambiguous terms that the property was conveyed to and accepted by plaintiff subject to existing liens, including the one at issue here. They take the position that plaintiff was aware of the existence of a paving lien affecting the property at the time the sale was completed, although the lien was not shown on the mortgage certificate, and that plaintiff thus did not rely on the mortgage certificate. They contend, finally, that plaintiffs agents and representatives were negligent in failing to inquire of the City of Lafayette as to whether a paving assessment had been levied against the property, and in failing to discuss the matter with Oak-bourne or its attorney at the time of the completion of the sale. Defendants argue that for these reasons the trial court correctly rejected plaintiff’s demands.
The trial judge ruled at the beginning of the trial that the provisions of the Act of Sale from Oakbourne to plaintiff were clear and unambiguous to the effect that ■the property was conveyed to plaintiff subject to the above paving lien, and that pa-rol evidence was not admissible to vary the terms of the instrument. He permitted the parties to make a proffer of proof, however, which consisted largely of parol evidence showing events which occurred prior to and at the time of the completion of the sale. At the conclusion of the trial judgment was rendered in favor of defendant Oakbourne, dismissing plaintiff’s suit as to that defendant.
The trial judge also concluded that plaintiff was aware of the existence of a paving lien affecting the property at the time the sale was completed, and that it thus did not rely on the mortgage certificate furnished by the Clerk of Court. Judgment was rendered, therefore, dismissing plaintiff’s suit as to defendants. Le-Blanc and Mid-Continent, and dismissing the third party demands of those defendants.
The decision of the trial court, to the effect that the Oakbourne property was conveyed to and accepted by plaintiff subject to the paving lien, was based solely on the following provision in the Act of Sale:
“It is understood and agreed between the parties herein that the monies being paid to vendor for this property are on a *925 net basis, after deducting monies being paid for all paving, sewerage and other assessments and easements, due and owing to public bodies.”
Defendants argue that the above quoted paragraph contains “express language” to the effect that the property was conveyed subject to the paving lien. Oakbourne argues that “The provision in question expressly intended to limit the general warranty provisions contained in the printed portion of the' deed,” and that “this type of provision in a warranty deed is very similar to an assumption clause, is very similar to a provision in a deed that a person is buying subject to a mortgage or subject to a lien, or subject to restrictive covenants.” LeBlanc and his insurer argue that the quoted provision means “that the amount paid was a net figure and that the Housing Authority of the City of Lafayette had assumed payment of the paving lien above the recited consideration of the deed.”
The law provides that when there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than adhere to the literal sense of the terms. LSA-C.C. art. 1950. All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act. LSA-C.C. art. 1955.
Where a contract is ambiguous, it is to be construed against the party who prepared it. LSA-C.C. art. 1957, and 1958; Monsur v. Thompson, 300 So.2d 655 (La.App. 3 Cir. 1974). Article 2474 of the Louisiana Civil Code provides that “The seller is bound to explain himself clearly respecting the extent of his obligations: any obscure or ambiguous clause is construed against him.”
The act of sale in the instant suit was prepared by the attorney for the seller, Oakbourne. The entire document was typed. A printed form was not used.
We are unable to agree with defendants or the trial court that the act of sale from Oakbourne to the Housing Authority provides that the latter was to acquire the property subject to the above paving lien. A reading of that document compels us to arrive at the opposite conclusion. The act of sale shows clearly, we think, that Oakbourne conveyed the property to the Housing Authority with full warranty of title- and free from any liens or encumbrances.
The above quoted provision in the deed, upon which defendants rely, recites merely that the price paid was the net balance due after paying all paving and other assessments. We find nothing in that provision which shows or even infers that the parties intended that the property was being conveyed subject to a paving lien. On the contrary, our interpretation of that paragraph, considered alone, is that the parties intended that all paving assessments were to be paid first, and that the vendee was to receive the remaining balance of the agreed purchase price after those payments were made.
Aside from the fact that the deed does not provide that the property was being conveyed subject to the paving lien, other provisions of that document show that Oakbourne specifically warranted title to the property and conveyed it to plaintiff free from any liens or encumbrances. The first part of the document provides, for instance, that the property was being conveyed to plaintiff “with full guarantee of title and free from all encumbrances.” The deed recites further that “the vendee is hereby finally and completely relieved of any and all further responsibility or liability for the payment of any additional funds, said property being transferred hereby free and clear of all liens and encumbrances to vendee herein.”
Considering all of the clauses in the act of sale, one by the other, as required by LSA-C.C. art. 1955, it seems clear to us that the parties intended that the Housing Authority was to acquire title to the property free from any liens or encumbrances. We find nothing doubtful in the contract, but if any ambiguity exists it must be con *926 strued against Oakbourne, the seller, since Oakbourne prepared the document and it was the vendor. See LSA-C.C. arts. 1957, and 2474.
Defendants argue that the contract is unambiguous and that parol evidence thus was not admissible against or beyond what is contained in the act, nor on what may have been said before, or at the time of making them, or since. See LSA-C.C. art. 2276. We agree that the contract involved here is free from ambiguity and that parol evidence should not be considered in interpreting it. We are mindful, of course, that our interpretation of the agreement differs radically from the interpretation placed on it by the trial court, and we concede that that circumstance alone may indicate that there is an ambiguity in the deed. We, therefore, have considered the parol testimony which was introduced as a proffer of proof.
Actually, we think the parol evidence which was offered was admissible in connection with plaintiff’s demand against defendant LeBlanc and his insurer, Mid-Continent, even though it may not have been admissible as to plaintiff’s claim against Oakbourne.
The parol evidence in the record indicates that Cleveland Romero, Jr., Executive Director of the Housing Authority, and plaintiff’s attorney had been advised prior to the time the sale was completed that the property was affected by a paving lien due the City of Lafayette. The Clerk of Court, however, issued a mortgage certificate showing that no such lien existed. When plaintiff’s attorney received that certificate, he promptly went to the Clerk’s office to have the records checked again, because of the information he had received earlier. After the records had been checked a second time by the deputy clerk and plaintiff’s counsel was again assured that no such paving lien existed, plaintiff’s counsel assumed that the property was free from any such lien and he proceeded to complete the sale. The attorney testified that he “assumed that it had been paid.” Romero testified that “When I saw the mortgage certificate, I just assumed that when they made all of these transactions, that all the paving assessment had been paid off so that it would be clear.”
We think the evidence supports plaintiff’s position that the parties intended that plaintiff was to acquire the property free from the paving lien.
Oakbourne’s attorney prepared the act of sale which was executed by the parties. If the seller had intended to convey the property subject to the paving lien, or if it had intended that the Housing Authority was to assume the payment of that paving lien, we think such a provision would have been inserted in the deed. The act of sale contained several specific provisions to the effect that Oakbourne warranted the title and conveyed the property free from all liens and encumbrances. Since the act provides specifically in several places that Oakbourne warrants the title to the property, and it contains no provision excepting a paving lien from that warranty, we must conclude that Oakbourne intended to convey the property free from the paving lien at issue here. This conclusion is compelled for the additional reason that any obscure or ambiguous clause in the deed is to be construed against the seller. LSA-C.C. art. 2474.
Our conclusion is that the act of sale specifically provides that the seller, Oakbourne, warranted the title to the property, and that it obligated itself to convey the property to the Housing Authority free and clear of all encumbrances, including the paving lien which is at issue here. Plaintiff thus is entitled to recover from Oakbourne the loss which it sustained because of the existence of the above paving lien.
We turn now to plaintiff’s claim for damages against the Clerk of Court and his insurer.
*927 These defendants concede that the Clerk failed to index the paving lien properly, and that his deputy failed to show the lien on the mortgage certificate issued to plaintiff. They contend primarily that they are not liable to plaintiff because the Housing Authority assumed payment of the paving lien. We have ruled that plaintiff did not assume payment of that obligation.
The Clerk and his insurer argue, further, however, that plaintiff is not entitled to recover because it did not rely on the mortgage certificate. They point out that plaintiff, as the purchaser, waived or dispensed with the mortgage certificate required by Article 3364 of the Civil Code, and they contend that plaintiff thus is es-topped from now alleging that it relied on such a certificate in connection with the purchase.
We find no merit to that argument. Article 3364 of the Civil Code imposes a duty on the notary public who passes certain acts to obtain a certificate of mortgage, and it imposes liability on the notary for damages towards the party who may suffer by his neglect in that respect. The agreement of the purchaser to dispense with such a certificate serves to protect the notary public from liability. It, however, does not relieve the Clerk of Court from liability in the event the purchaser obtains a mortgage certificate directly from the clerk and relies on it in completing the sale.
We hold that plaintiff is not estopped from recovering damages against the Clerk merely because it waived the production of the mortgage certificate required by LSA-C.C. art. 3364.
The Clerk and his insurer contend, finally, that plaintiff was aware of the existence of a paving lien affecting the Oakbourne property, that it did not rely on the mortgage certificate furnished by the Clerk, and that defendants thus are not liable in damages to plaintiff. We conclude, for the reasons already assigned, that plaintiff did rely to its detriment on the mortgage certificate furnished by the Clerk of Court, and that plaintiff is entitled to recover the damages it sustained.
Plaintiff is entitled to recover the amount of damages it sustained from all of the defendants, in solido. Oakbourne, however, is the principal obligor, and we think the third party plaintiffs, LeBlanc and Mid-Continent, are entitled to recover from Oakbourne any sums which said third party plaintiffs may be compelled to pay to the Housing Authority. *
For the reasons assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of plaintiff, Housing Authority of the City of Lafayette, and against defendants, Oakbourne Investments, Inc., Oliver J. LeBlanc and Mid-Continent Underwriters, Inc., in soli-do, for the sum of $6,137.60, with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings. Judgment also is rendered in favor of third party plaintiffs, Oliver J. LeBlanc and Mid-Continent Underwriters, Inc., and against third party defendant, Oakbourne Investments, Inc., for any and all sums which said third party plaintiffs may be compelled to pay Housing Authority of the City of Lafayette pursuant to the above judgment, together with all costs which they may be compelled to pay.
The costs of this appeal are assessed to defendant-appellee, Oakbourne Investments, Inc.
Reversed and rendered.